IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

UNITED STATES OF AMERICA                                                                 PLAINTIFF

v.                                    Case No. 4:18-cr-00016-02 KGB

KENWAN SHERROD                                                                           DEFENDANT

## ORDER

On February 23, 2022, this Court conducted an initial sentencing hearing in this matter (Dkt. Nos. 100-101). Prior to that hearing, the United States filed a sentencing memorandum requesting that the Court impose a sentence of 180 months of imprisonment with respect to defendant Kenwan Sherrod (Dkt. No. 96). The United States also filed conventionally several exhibits (Dkt. No. 97). Mr. Sherrod opposes the United States' request for an upward variance. For the following reasons, the Court grants the United States' motion for upward variance and, pending further argument from counsel in this matter, considers at this time that the appropriate range for sentencing on count three is 90 to 120 months to run consecutive to the sentence imposed on count one. A second sentencing hearing is set for July 21, 2022, at 11:00 a.m. (Dkt. No. 103). The Court will hear from counsel during that second sentencing hearing and will make a final determination as to sentencing.

  I.    **Background**

    A.    **Events In Federal Court Related To Current Charge**

On January 9, 2018, Mr. Sherrod, also known as "Booman," and his co-defendant Machita Decosta Mitchell, Jr., also known as "Frog," were charged by indictment in this Court as follows: (1) in count one both defendants were charged with conspiracy knowingly and intentionally to possess with intent to distribute less than 50 kilograms of marijuana in violation of 21 U.S.C. §

846; (2) in count two both defendants were charged with knowingly and intentionally possessing with intent to distribute less than 50 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D); (3) in count three both defendants were charged with aiding and abetting one another in knowingly and intentionally possessing at least one firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) and 2; and (4) in count four Mr. Mitchell was charged with being a felon in possession of a firearm in and affecting commerce in violation of 18 U.S.C. § 922(g)(1) (Dkt. No. 3).  The indictment included several forfeiture allegations (*Id.*).

On October 14, 2021, Mr. Sherrod pled guilty to count one charging conspiracy knowingly and intentionally to possess with intent to distribute less than 50 kilograms of marijuana in violation of 21 U.S.C. § 846 and count three charging aiding and abetting in knowingly and intentionally possessing at least one firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A), referencing the crime charged in count two of the indictment charging knowingly and intentionally possessing with intent to distribute less than 50 kilograms of marijuana (Dkt. No. 91).  In exchange, the United States dismissed the remaining counts against Mr. Sherrod (*Id.*, at 1).  At the time of the plea hearing, Mr. Sherrod was advised that the maximum potential penalty for the charge in count one was not more than five years of imprisonment, a fine of not more than $250,000, not less than two years of supervised release, and a $100 special assessment (*Id.*, at 2).  He was advised that the maximum potential penalty for the charge set forth in count three is not less than five years of imprisonment and not more than life imprisonment to run consecutive, a fine of not more than $250,000, not more than five years of supervised release, and a $100 special assessment (*Id.*).

The United States Probation Office prepared a written Presentence Investigation Report ("PSR") to assist in sentencing.  Based upon calculations in the PSR, Mr. Sherrod's total offense

level is 20, as the United States opts not to move to award a third-point reduction for acceptance of responsibility for reasons explained in open Court, and his total criminal history score is 0 with a criminal history category of I.  Based upon this, the Court anticipates and calculates that the guideline term of imprisonment on count one is 33 to 41 months of imprisonment, with a statutory maximum sentence of five years of imprisonment on count one.  United States Sentencing Guideline ("USSG") § 5G1.2(b).  Further, with respect to count three, 18 U.S.C. § 924(c) requires that, at a minimum, the mandatory minimum sentence of 60 months of imprisonment run consecutive to the sentence imposed on count one.  Under the statute, for count three, the minimum term of imprisonment is 60 months and the maximum term is life.  18 U.S.C. § 924(c)(1)(A).

The Court conducted a sentencing hearing at which exhibits were presented by the United States and not objected to by Mr. Sherrod.  The Court also heard argument from counsel and heard from Mr. Sherrod.

    **B.**  **History Of Arrest On Current Charge And Additional Events**

      **1.**  **February 2016 Events**

In February 2016, Mr. Mitchell was accused of making threats to kill and brandishing a firearm with regard to Tyrone Nutt, also known as "Tonshe," and Loretta Threadgill.  This incident appears to be related to drug trafficking activities, as Mr. Mitchell's threats purportedly stemmed from someone stealing his marijuana, drugs, or illegal proceeds.  The United States submitted to the Court the case file, including the case report, sworn affidavit of arrest dated February 24, 2016, and transcribed statements of Mr. Nutt and Ms. Threadgill (Dkt. No. 96-1).

Mr. Mitchell was charged in Little Rock District Court and arrested for the offense against Mr. Nutt and Ms. Threadgill.  While in custody, Mr. Mitchell's jail phone calls were monitored; he was informed of this practice in advance.  The United States provided to the Court copies of

the audio recordings of these jail calls (Dkt. No. 97).  Mr. Mitchell engaged in phone calls with his wife, father, and an associate, who the Court determines to be Mr. Sherrod, planning and directing Mr. Nutt and Ms. Threadgill to drop their complaints against him in exchange for monetary payment.  In fact, Mr. Mitchell discusses that his wife will pick up Mr. Nutt and Ms. Threadgill and take them to the authorities so that Mr. Nutt and Ms. Threadgill can formally drop their complaints against Mr. Mitchell.  Mr. Mitchell also discusses the payment to Mr. Nutt and Ms. Threadgill in exchange for this.  The Court has reviewed statements during the jail calls.  Mr. Sherrod purportedly told Mr. Mitchell he would take care of this when Mr. Mitchell was arrested.

Currently, Mr. Sherrod faces charges of witness bribery in Pulaski County, Arkansas, Circuit Court resulting from his alleged involvement in this conduct.  This conduct is summarized in the PSR (PSR, ¶ 33).

### 2. June 2017 Events Giving Rise To Federal Indictment

On June 13, 2017, while Mr. Mitchell was on Arkansas state supervision, his home was searched (PSR, ¶¶ 6-7).  Authorities proceeded on an Arkansas state supervision search waiver on file but then obtained a warrant for the search.  Authorities located marijuana and firearms in the home.  Mr. Sherrod was in the home at the time and made statements to law enforcement officers about a firearm or firearms in the home (PSR, ¶ 6).

Initially, Mr. Mitchell was arrested by state authorities, charged, and detained but then released on bond on June 16, 2017.  The Arkansas state charges against Mr. Mitchell were *nolle prossed* as a result of this federal prosecution.  These events provide the basis for the charges to which Mr. Sherrod pled guilty in this case.  During his plea hearing, Mr. Sherrod admitted to being a member of the Wolfe Street Crips.  He also admitted that he jointly possessed with Mr. Mitchell

one or more of the firearms found in the residence and possessed the firearms to protect the marijuana and drug proceeds.

During jail phone calls during this period of incarceration, Mr. Mitchell discussed with associates, including Mr. Sherrod, his marijuana distribution activities (PSR, ¶ 8). During this call, Mr. Sherrod indicated he was in South Texas and had gone across the border into Mexico (*Id.*).

### 3.   July 2017 Ultra Power Lounge Events

On or about July 1, 2017, Mr. Mitchell and Mr. Sherrod were on the scene of the Ultra Power Lounge shooting. Mr. Mitchell was arrested again on July 5, 2017, for his alleged involvement in this event. As a result of these events on July 1, 2017, Tyler Jackson was charged in Pulaski County, Arkansas, state court, pled guilty, and received a sentence of imprisonment of 96 months (Dkt. No. 96-2). Mr. Jackson provided a recorded statement to investigators regarding the incident, a copy of which has been provided by the United States to the Court (Dkt. No. 97).[1] According to Mr. Jackson, he accompanied Mr. Mitchell, Mr. Sherrod, and others to the Ultra Power Lounge the evening of July 1, 2017. Mr. Jackson stated that he did not bring a firearm with him but that others with whom he was travelling had firearms with them that night when entering the Ultra Power Lounge, including Mr. Sherrod and Mr. Mitchell. Mr. Jackson stated that Mr. Sherrod frequently patronized the Ultra Power Lounge. Mr. Jackson alleged that Mr. Mitchell gave to Mr. Jackson a firearm for Mr. Jackson's use that night, with the understanding that there were individuals in the Ultra Power Lounge that Mr. Jackson's group did not like. Mr. Jackson

---

[1] According to counsel for the government at the first sentencing hearing for Mr. Mitchell, the government attempted to confer by telephone or in-person with Mr. Jackson and to make him available during the first sentencing hearing for cross examination by counsel for Mr. Mitchell, but the government was unable to confer with or to make Mr. Jackson available due to COVID-19 quarantine restrictions at that time at the facility housing Mr. Jackson. As a result, the government provided to the Court Mr. Jackson's previously recorded statement about these events.

further alleged that Mr. Mitchell and Mr. Sherrod verbally encouraged Mr. Jackson to shoot at individuals at the Ultra Power Lounge. Mr. Jackson also described events that night and following that night, involving gang signs and firearms, in which Mr. Sherrod participated.

### 4.     July 2017 Green Mountain Drive Events

On or about July 24, 2017, Mr. Mitchell is heard on a jail phone call discussing with Mr. Sherrod a plan to have two other associates, Tyler Jackson and Kenterrioun Chandler, visit Chris Alexander's apartment on Green Mountain Drive in regard to marijuana believed to be located at the apartment. During the conversation, in pertinent part, the following exchange occurs between Mr. Mitchell and an associate identified here as "unknown" but, based on the PSR, was Mr. Sherrod:

> Unknown: He ain't got nobody but that a little uh that little bad ass and that motherfucker.
>
> Mitchell: Huh?
>
> Unknown: He ain't got nobody but that his bad ass son in that motherfucker.
>
> Mitchell: (Minor's name)?
>
> Unknown: Yeah. Hell yeah I just left from out there, Man nigga. So I don't know I don't want to just hit him like, hey, dude say he know this one nigga the whole thang. And goddamn he, see what he say and if be talking about wait till he get back or something I'm just gonna let dude run up in there. Shit get that and be fuck it.
>
> Mitchell: You hear me, hell yeah run up in that motherfucker snatch that little nigger ass telling him nigga you better come on with it. Everything. But shit that's what I was calling to check on and shit. I'll hit you probably in the morning to see what the hell all went down.
>
> Unknown: Alright.
>
> Mitchell: Okay.

(Dkt. No. 97; *see also* PSR, ¶ 34).  The Court understands this call occurred approximately two hours before events at the apartment on Green Mountain Drive.

Mr. Mitchell is heard on another jail phone call the following day discussing with Mr. Sherrod what transpired.  In pertinent part, the following conversation occurs:

> Unknown: Hey you see the motherfucking news nigger.
>
> Mitchell:   Nuh uh.
>
> Unknown: Boy.
>
> Mitchell:   What?
>
> Unknown: Nigger (minor's name) ass dead.
>
> Mitchell:   He's dead?
>
> Unknown: Man.
>
> Mitchell:   Hell no.
>
> Unknown: On Crip.
>
> Mitchell:   What?
>
> Unknown: Yeah no bullshit.
>
> Mitchell:   Trying to protect his daddy ain't he man.
>
> Unknown: Man I'm talking about well what, this on the news it just say shit whoever it was uh shit he let him in and that's it.  He was there by his self.  Well they said it wasn't no like it wasn't no break-in or nothing.
>
> Mitchell:   Everything was left there?  It wasn't no –
>
> Unknown: He was there, no.
>
> Mitchell:   They took some shit whoever went up in there?
>
> Unknown: Nall, nall, hell nall.  They say it wasn't nothing took.
>
> Mitchell:   Hmmm.

7

(Dkt. No. 97; *see also* PSR, ¶ 34).

As a result of events that occurred during that visit to the apartment on Green Mountain Drive, a 14-year old boy was killed. There was marijuana recovered from the apartment on Green Mountain Drive. Mr. Jackson was charged in Pulaski County, Arkansas, state court; entered a guilty plea; and received a 20-year sentence in the Arkansas Department of Correction for his involvement in the offense (Dkt. No. 96-4), and Mr. Chandler was charged in Pulaski County, Arkansas state court; entered a guilty plea; and received a 30-year sentence in the Arkansas Department of Correction for his involvement in the offense (Dkt. No. 96-3). Mr. Sherrod faces charges of capital murder and aggravated robbery (PSR, ¶ 34). As set forth in the PSR, Mr. Sherrod has reached a plea deal with the State of Arkansas whereby Mr. Sherrod will enter a guilty plea to Solicitation of Residential Burglary, with a ten-year sentence (*Id.*).

According to the United States, the "plain language of 18 U.S.C. § 924(c) forbids a federal district court to direct that a term of imprisonment under that statute run concurrently with any other term of imprisonment, whether state or federal." *United States v. Gonzales*, 520 U.S. 1, 11 (1997). The United States represents that, to avoid this, Mr. Sherrod's "state defense counsel has delayed resolution of the state case until after the federal sentencing, and the state prosecutor has advised that the state has agreed to run the state sentence concurrent to the federal sentence." (Dkt. No. 96, at 7-8). The United States urges this Court to take this into consideration because it appears that Mr. Sherrod may be in federal custody and "even if this Court expressly ordered the federal sentence to run consecutive to the yet-to-be-imposed state sentence, it appears [Mr.] Sherrod would serve his federal sentence first." (*Id.*, at 8).

On January 9, 2018, Mr. Mitchell was indicted in this federal case now pending before the Court.

## II. Discussion

In the United States' sentencing memorandum and accompanying exhibits and at the first sentencing hearing, the parties presented evidence for the Court to consider with respect to sentencing. At this stage, the Court makes findings of fact by a preponderance of the evidence. *See, e.g., United States v. Bah,* 439 F.3d 423, 426 n. 1 (8th Cir. 2006) ("[J]udicial fact-finding using a preponderance of the evidence standard is permitted provided that the [Sentencing Guidelines] are applied in an advisory manner."); *see also United States v. Bastian*, 650 F. Supp. 2d 849, 856–57 (N.D. Iowa 2009), *aff'd*, 603 F.3d 460 (8th Cir. 2010). The Court considers a wide variety of evidence to arrive at a sentence, including undisputed portions of the PSR and testimony and other evidence the parties introduced and may introduce at the sentencing hearings. The Eighth Circuit Court of Appeals has repeatedly held that a district court may consider uncharged, dismissed, and even acquitted conduct at sentencing. *See, e.g., United States v. Whiting,* 522 F.3d 845, 850 (8th Cir. 2008); *see also Bastian*, 650 F. Supp. 2d at 856–57.

### A. Variance Request And Exhibits

The Court considers the United States' request a request for a variance. The Eighth Circuit has determined that "[i]ncreasing a defendant's sentence based on facts found by a judge by a preponderance of the evidence 'violate[s a defendant's] rights only if the sentence exceed[s] the statutory maximum.'" *United States v. LeBeau*, 867 F.3d 960, 978 (8th Cir. 2017) (quoting and citing *United States v. Campbell*, 764 F.3d 880, 893 (8th Cir. 2014); *United States v. Villareal-Amarillas*, 562 F.3d 892, 898 (8th Cir. 2009)). Here, the Court considers whether to vary with respect to Mr. Sherrod's sentence. With respect to count one, the maximum term of imprisonment for count one under the statute is five years. 21 U.S.C. § 846. With respect to count three, 18 U.S.C. § 924(c) requires that, at a minimum, the mandatory minimum sentence of 60 months of

9

imprisonment run consecutive to the sentence imposed on count one.  Under the statute, for count three, the minimum term of imprisonment is 60 months and the maximum term is life.  18 U.S.C. § 924(c)(1)(A).  The Court does not intend to impose a sentence that exceeds the statutory maximum on counts one or three.

As to the exhibits submitted for the Court's consideration, the Court understands that Mr. Sherrod does not object to the exhibits submitted by the United States for this Court's consideration in arriving at a sentence.  Further, "[t]he Eighth Circuit Court of Appeals has repeatedly held—before and after *Crawford* [*v. Washington,* 541 U.S. 36 (2004)]—that the Confrontation Clause does not apply at sentencing."  *United States v. Bentley,* 492 F. Supp. 2d 1050, 1055 (N.D. Iowa 2007) (Reade, C. J.), *aff'd,* 561 F.3d 803 (8th Cir. 2009), *cert. denied,* 558 U.S. 865 (2009).

Also with respect to the exhibits, when relevant and "accompanied by sufficient indicia of reliability to support the conclusion that it [was] probably accurate," the Court may credit hearsay at the sentencing phase.  *United States v. Sharpfish,* 408 F.3d 507, 511 (8th Cir. 2005).  "'Hearsay is admissible in a sentencing hearing and can be used to determine facts if the hearsay has sufficient indicia of reliability.'"  *United States v. Schlosser,* 558 F.3d 736, 740 (8th Cir. 2009) (quoting *United States v. Hansel,* 524 F.3d 841, 847 (8th Cir. 2008)).  Statements by Mr. Sherrod in recorded jail calls are not hearsay; they are admissions by a party opponent when offered by the opposing party for the Court's consideration.  To the extent the Court intends to rely on hearsay to support a factual finding pertinent to sentencing, the Court will make specific findings about the indicia of reliability to support the conclusion that the hearsay is probably accurate.

      **B.**     **18 U.S.C. § 3553(a) Factors**

In pertinent part, 18 U.S.C. § 3553(a) directs the Court to consider the following factors in determining the particular sentence to be imposed:

      (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

      (2) the need for the sentence imposed—
          (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

          (B) to afford adequate deterrence to criminal conduct;

          (C) to protect the public from further crimes of the defendant; and

          (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

      (3) the kinds of sentences available;

      (4) the kinds of sentence and the sentencing range established for [. . .] the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [. . .] issued by the Sentencing Commission[;]

      (5) any pertinent policy statement [. . .] issued by the Sentencing Commission[;]

      (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

      (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The Court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)" above. *Id.* However, the Court need not explicitly set forth its analysis of all the § 3553(a) factors. *See, e.g., United States v. Lamoreaux,* 422 F.3d 750, 756 (8th Cir. 2005) (quoting *United States v. Crosby,* 397 F.3d 103, 113 (2d Cir. 2005)) ("Nothing in § 3553(a) or in the *Booker* remedy opinion requires 'robotic incantations' that each statutory factor has been considered.").

      **C.**     **Analysis**

    The Court makes the following findings of fact:

      i.        The United States has demonstrated by a preponderance of the evidence that, while being held in the Pulaski County Jail, Mr. Mitchell engaged in conduct to bribe a witness or witnesses in a then-pending criminal case against him in an effort to dispose of that case. The United States also has demonstrated by a preponderance of the evidence that Mr. Sherrod participated in that offense (PSR, ¶ 33). The Court reaches these conclusions based on Mr. Mitchell and Mr. Sherrod's own statements during the jail calls and during Mr. Mitchell's arrest for the offense. This demonstrates a disregard for the law.

      ii.        Although Mr. Sherrod has only one prior misdemeanor conviction (PSR, ¶ 28), Mr. Sherrod has had prior Arkansas state court criminal cases filed against him *nolle prossed*, including one in which a witness identified Mr. Sherrod as the suspect who shot the victim and another in which Mr. Sherrod purportedly hit another inmate with a closed fist while in custody (PSR, ¶¶ 30, 31).

      iii.        Mr. Sherrod, despite being involved in an offense that resulted in charges being filed against Mr. Mitchell for drugs and guns with Mr. Mitchell incarcerated pending trial, continued to engage in illegal conduct involving drugs, including a trip to South Texas and Mexico (PSR, ¶ 8). The Court reaches this conclusion based on Mr. Mitchell and Mr. Sherrod's own statements during the jail calls and based on the nature and circumstances of the instant offense of conviction. This demonstrates a disregard for the law and a likelihood to reoffend.

      iv.        Mr. Sherrod admits in this case to possessing firearms and controlled substances simultaneously (PSR, ¶¶ 5-9). This conduct poses a risk to Mr. Sherrod and to all of those around Mr. Sherrod, including to society generally.

      v.        Mr. Sherrod admits in this case to being a drug dealer, and the United States has demonstrated by a preponderance of the evidence that Mr. Sherrod is not a low-level drug dealer

but instead is a high-ranking, repeat drug dealing offender (PSR, ¶¶ 5-9, 34). The Court reaches this conclusion based on Mr. Mitchell and Mr. Sherrod's own statements at the scene of the search in this case and during the jail calls.

vi.     Mr. Sherrod knowingly permits and encourages others to engage in illegal conduct for his benefit and the benefit of others with whom he associates. The Court reaches this conclusion based on Mr. Sherrod's conduct regarding the witness bribery allegations and the events to occur at the Green Mountain Drive apartment, including but not limited to the plea agreement Mr. Sherrod reportedly has entered into in his pending state court case (PSR, ¶ 34).

vii.    Mr. Sherrod describes a lack of youthful guidance based on his upbringing, having an incarcerated father who did not primarily raise him and a single mother who did primarily raise him but who left Mr. Sherrod home alone often and who also was incarcerated, leaving Mr. Sherrod in the care of his grandmother during that period (PSR, ¶ 38).

viii.   Mr. Sherrod admits to membership in a gang (PSR, ¶ 38).

ix.     Mr. Sherrod describes traumatic events he experienced, including the death of his brother (PSR, ¶¶ 38, 42).

x.      Mr. Sherrod has suffered from mental health challenges and drug addiction (PSR, ¶¶ 42, 43).

The Court considers the § 3553(a) factors and concludes that an upward variance from the range of 33 to 41 months up to a range of 41 to 60 months, with 60 months being the statutory maximum on count one, and an upward variance to a range of 90 to 120 months on count three, to run consecutive to the term imposed on count one, is appropriate. Consideration of the 18 U.S.C. § 3553(a) factors merits an upward variance in Mr. Sherrod's sentence in this case. A second

13

sentencing hearing has been set for July 21, 2022, in this case by separate order.  The Court will hear from counsel at that time and will make a final determination as to sentencing.

    So ordered this 29h day of June, 2022.

                                                                                             Kristine G. Baker
                                                                                             United States District Judge